# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT and CHRISTINE MARTELLA, | |
| Plaintiffs, | CIVIL ACTION NO. 3:06-CV-1703 |
| v. | (JUDGE CAPUTO) |
| STEPHEN and PAMELA WILEY, DONALD W. and LUCIA A. ORTH, OAK RIDGE CONSTRUCTION COMPANY, and ROBERT E. STRUNK, individually and d/b/a ROBERT E. STRUNK & ASSOCIATES, INC., | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is Defendants Donald W. and Lucia A. Orth's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 35.)  For the reasons set forth below, the Court will grant this motion.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

## **BACKGROUND**

On August 30, 2006, Plaintiffs Robert and Christine Martella filed their Complaint (Doc. 1) in this Court.  Therein, they allege: In April 1984, Defendants Donald W. and Lucia A. Orth ("the Orths") purchased property adjacent to Lake Naomi, in Pocono Pines, Pennsylvania. (Doc. 1 ¶¶ 3, 4 and 12.)  The Orths entered into an agreement with Defendants Oak Ridge Construction Company ("Oak Ridge") and Robert E. Strunk ("Strunk") to construct a lake house. (Doc. 1 ¶ 12.)  The lake house was designed by Strunk, an architect, and built by Oak Ridge. (Doc. 1 ¶ 13.)  The original design for the lake house included a wooden deck located off the rear of the property. (Doc. 1 ¶ 14.)

The deck, which was constructed of pressure-treated wood, measured approximately twelve feet (12') by thirty-five feet (35"), and was nailed to the rear of the house approximately twelve feet (12') above the ground. (Doc. 1 ¶ 15.)  From May 25, 1984 through 2002, and from 2003 until the present time, there are no work permits issued which would have permitted the installation or repair of the deck attached to the lake house. (Doc. 1 ¶ 16.)  On March 23, 2001, the Orths sold the lake house to Defendants Stephen and Pamela Wiley ("the Wileys"). (Doc. 1 ¶ 17.)  The Wileys rented the lake house to two couples, Robert and Jen Bowen ("the Bowens") and Tim and Andrea Kelly ("the Kellys"). (Doc. 1 ¶ 19.)

On Saturday, July 23, 2005, Plaintiffs were invited by the Bowens and Kellys to the lake house for a party. (Doc. 1 ¶ 18.)  While at the lake house, Plaintiffs and approximately twenty (20) other individuals gathered on the deck. (Doc. 1 ¶ 20.)  At approximately 10:15 p.m., the deck collapsed. (Doc. 1 ¶ 21.)  At the time the deck collapsed, Plaintiffs were located at the right rear portion of the deck, closest to the lake house. (*Id.*)  As a result of the deck's collapse, Plaintiffs were thrown to the ground below. (Doc. 1 ¶ 22.)  Plaintiffs suffered severe and permanent injuries. (*Id.*)

As a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Robert Martella ("Mr. Martella") suffered severe injuries, including, but not limited to, a broken distal radius requiring the placement of pins, reflex sympathetic dystrophy and associated symptoms, a torn right rotator cuff, C6-7 disc herniation, stenosis, and right superficial radial sensory neuropathy, all of which required, and will continue to require in the future, extensive medical care and treatment. (Doc. 1 ¶ 23.)  Mr. Martella has and will continue in the future to be disabled and unable to work.

(Doc. 1 ¶ 24.)

Also as a direct and proximate result of the negligence and carelessness of Defendants, Plaintiff Christine Martella ("Mrs. Martella") suffered severe injuries, including, but not limited to, soft tissue bruising to her face, arms, back, buttocks, and the development of a subdural hematoma, all of which required extensive medical care and treatment. (Doc. 1 ¶ 25.)

Plaintiffs have incurred, and will continue to incur, medical expenses. (Doc. 1 ¶ 26.)  Plaintiffs have also endured significant pain and suffering, some or all of which will continue to be endured in the future. (Doc. 1 ¶ 27.)  Plaintiffs have incurred a loss of an ability to enjoy life's pleasures, disfigurement, mental anguish, emotional upset, and other damages, some or all of which will continue into the future. (Doc. 1 ¶ 28.)

In Count I of their Complaint, Plaintiffs assert a claim for negligence against the Wileys, as owners of the lake house. (Doc. 1 ¶¶ 29-34.)  In Count III, Plaintiffs allege that Oak Ridge was negligent in its construction of the lake house. (Doc. 1 ¶¶ 40-43.)  In Count IV, Plaintiffs allege that Strunk was negligent in his design of the lake house. (Doc. 1 ¶¶ 44-47.)  In Count V, Mr. Martella asserts a loss of consortium claim against all Defendants. (Doc. 1 ¶¶ 48-50.)  In Count VI, Mrs. Martella asserts a loss of consortium claim against all Defendants. (Doc. 1 ¶¶ 51-53.)

In Count II, which is the count relevant to the Orths' motion, Plaintiffs alleged that:

> 36. At all times relevant and material hereto, the lake house which the Orths sold to the Wileys contained a defective and dangerous condition in that the deck upon which plaintiffs were injured was not constructed in accordance with accepted construction practices or in accordance with local, state and national building codes and statutes in that the deck was affixed to the lake house with nothing more than nails through rotting wood without the use of lag bolts or other acceptable methods of securing the deck.

> 37. The Orths knew or in the exercise of reasonable care should have known of the defective and dangerous condition of the deck at the time they sold the lake house to the Wileys.
>
> 38. The negligence of defendants includes, but is not limited to the following:
>
> > (a) failing to recognize and correct the defective and dangerous condition described herein;
> > (b) failing to disclose the dangerous and [defective] condition upon sale of the premises;
> > (c) concealing the defective and dangerous condition upon the sale of the premises;
> > (d) failing to take reasonable measures to make the premises safe for the Wileys and foreseeable [licensees], including the plaintiffs in this case; and
> > (e) maintaining the lake house during their ownership in violation of the statutes, laws, regulations and codes pertaining to buildings in the Commonwealth of Pennsylvania.
>
> 39. As a direct and proximate result of the negligence of the defendants described herein, plaintiffs incurred injuries and damages as set forth more fully throughout this Complaint.

(Doc. 1 ¶¶ 35-39.)

On December 12, 2006, the Orths filed a Motion to Dismiss Plaintiffs' claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 35.) The Orths filed a brief in support of their motion on December 21, 2006. (Doc. 37.) Plaintiffs filed their brief in opposition on January 4, 2007. (Doc. 39.) The Orths did not file a reply brief within the allotted time period. Consequently, the Orths' motion is now ripe for disposition.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of

a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting all factual allegations in the complaint as true and "drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations in the complaint."  *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 483 (3d Cir. 1998).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether the plaintiff will ultimately prevail.  *See id.*  In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

**DISCUSSION**

The Orths move the Court to dismiss Plaintiffs' claims against them. The Orths argue that, as former owners of the lake house, they cannot be held liable for Plaintiffs' injuries. The Court agrees and will address only this argument advanced by the Orths.

Under section 352 of the Restatement (Second) of Torts, "[e]xcept as stated in [section] 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession." RESTATEMENT (SECOND) OF TORTS § 352 (1965). Section 353 provides:

> (1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if
>
> (a) the vendee does not know or have reason to know of the condition or the risk involved, and
>
> (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.
>
> (2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had a reasonable opportunity to discover the condition and to take such precautions.

RESTATEMENT (SECOND) OF TORTS § 353. Pennsylvania appears to have adopted these sections of the Restatement. *See Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 312-13 (3d Cir. 1985) (applying Pennsylvania law); *Shane v. Hoffmann*, 324 A.2d 532 (Pa. Super. Ct. 1974) (holding real estate brokers and vendor liable under section 353 for

6

the sale of a residential property that had a defective sewer).

The allegations set forth in Plaintiffs' Complaint fail to satisfy the elements of section 353.  First, Plaintiffs allege that the Wileys, as vendees, "knew or in the exercise of reasonable care should have known of the defective and dangerous condition of the deck . . . ." (Doc. 1 ¶ 32.)  Thus, according to Plaintiffs, the Wileys, as vendees, possessed the very knowledge or constructive knowledge that absolves the Orths, as vendors, of liability under section 353(1)(a).

Second, while Plaintiffs allege that the Orths, as vendors, knew or should have known of the dangerous condition of the deck (Doc. 1 ¶ 37), Plaintiffs do not allege that the Orths had reason to believe that the Wileys, as vendees, would not discover the condition or realize the risk involved.  Indeed, such an allegation would contradict Plaintiffs' assertion that the Wileys "knew or in the exercise of reasonable care should have known of the defective and dangerous condition of the deck . . . ." (Doc. 1 ¶ 32.)  As such, the requirement that the vendors have reason to believe that the vendees would not discover the condition or realize its risk is not satisfied. *See* RESTATEMENT (SECOND) OF TORTS § 353(1)(b).

Third, even if Plaintiffs' allegations satisfied the elements of section 353(1), absent a vendor's active concealment of the condition, liability only continues until the vendee has had a reasonable opportunity to discover the condition and to take effective precautions against it. RESTATEMENT (SECOND) OF TORTS § 353(2).  The Orths sold the lake house to the Wileys more than four (4) years prior to the accident.  Four (4) years of time certainly provided the Wileys a reasonable opportunity to discover the fact that the deck was only attached to the lake house by nails, rather than a more secure method of attachment, and take effective precautions against it. *See* RESTATEMENT (SECOND) OF

TORTS § 353(2) cmt g. ("In determining what is sufficient opportunity, various factors are to be considered.  One is the time elapsed; a vendee who has been in possession for only a week cannot be expected to discover and remedy conditions which one who has been in occupation four years may reasonably be expected to find and repair.").  Therefore, absent their active concealment of the defective condition of the deck, by July 2005, more than four (4) years after the sale of the lake house, the Orths were no longer liable for any personal injuries suffered as a result of the defective condition of the deck.

Nothing in Plaintiffs' Complaint suggests that the Orths actively concealed the condition of the deck, either by hiding the condition or by misleading the Wileys into a failure to discover it.  *See* RESTATEMENT (SECOND) OF TORTS § 353(2) cmt g. ("Where the vendor actively conceals the condition, either by hiding it or by misleading the vendee into a failure to discover it, any delay in such discovery is to be attributed to the vendor himself.  He therefore remains liable until the vendee has in fact discovered the condition, and has had adequate opportunity to take precautions against it.").  Indeed, Plaintiffs' allegation that "[t]he *negligence* of [the Orths] includes, but is not limited to . . . concealing the defective and dangerous condition upon the sale of the premises" (Doc. 1 ¶ 38. (b) (emphasis added)), belies any suggestion that the Orths intentionally concealed the condition of the deck with the purpose of deceiving the Wileys.  *See Roberts v. Estate of Barbagallo*, 531 A.2d 1125, 1130-31 (Pa. Super. Ct. 1987) (active concealment requires an intentional concealment of true facts which is calculated to deceive (citing *DeJoseph v. Zambelli*, 139 A.2d 644 (Pa. 1958)))*.*

## CONCLUSION

For the reasons stated above, the Court will grant the Orths' motion to dismiss

Plaintiffs' claims (Counts II, V and VI) against them.

      An appropriate Order follows.

 April 17, 2007                                    /s/ A. Richard Caputo
Date                                                      A. Richard Caputo
                                                              United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT and CHRISTINE MARTELLA, | |
| Plaintiffs, | CIVIL ACTION NO. 3:06-CV-1703 |
| v. | (JUDGE CAPUTO) |
| STEPHEN and PAMELA WILEY, DONALD W. and LUCIA A. ORTH, OAK RIDGE CONSTRUCTION COMPANY, and ROBERT E. STRUNK, individually and d/b/a ROBERT E. STRUNK & ASSOCIATES, INC., | |
| Defendants. | |

## **ORDER**

**NOW**, this __17th__ day of April, 2007, **IT IS HEREBY ORDERED** that Defendants Donald W. and Lucia A. Orth's Motion to Dismiss Plaintiffs Robert and Christine Martella's claims (Counts II, V and VI) against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 35) is **GRANTED**.

                                         /s/ A. Richard Caputo
                                         A. Richard Caputo
                                         United States District Judge